**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: October 4 2016

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-30551 |
| | ) | |
| Birdstone, Inc., | ) | Chapter 11 |
| | ) | |
| Debtor(s). | ) | JUDGE JOHN P. GUSTAFSON |

### MEMORANDUM AND ORDER

This cause comes before the court on Birdstone, Inc.'s ("Debtors") Motion to Request Determination by the Court of the Effect of Confirmation of the Plan Upon Preconfirmation Orders of Adequate Protection [Doc. #220] and the Response to Debtors' Motion to Request Determination by the Court of the Effect of Confirmation of the Plan Upon Preconfirmation Orders of Adequate Protection filed by First Federal Bank of the Midwest ("First Federal") [Doc. #224].

This matter involves the proper interpretation of two documents: 1) the Interim Agreed Order on Motion of Procedurally Consolidated Debtor, Birdstone, Inc., for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and to Set Adequate Protection Payment Pursuant to 11 U.S.C. § 361 ("Cash Collateral Order") [Doc. #192] and the Amended Chapter 11 Plan filed by Birdstone, Inc. [Doc. #176], as modified by the Order Confirming Chapter 11 Plan [Doc. #208] entered on July 29, 2016.

The underlying facts do not appear to be in dispute. The Cash Collateral Order provides for payments of $17,000 per month for the months of June, July and August of 2016. However, the Order states that "Debtors' right to use the Cash Collateral in accordance with the terms of this

Order shall terminate upon the earliest of (a) the confirmation, . . .". For the month of August 2016, the Debtors made the initial semi-monthly adequate protection payment of $8,500. However, on advice of counsel, the Debtors did not make the second $8,500 adequate protection payment.

This would be in keeping with the usual rule that once a Chapter 11 plan is confirmed, property revests in the reorganized debtor, and the automatic stay terminates. The confirmed plan would then control the obligations of the parties going forward. As one court stated:

> In this case, the confirmation of United's plan of reorganization terminated the automatic stay as to HSBC's interest in United's SFO leasehold. Confirmation has the effect of "revesting" property of the bankruptcy estate in the debtor pursuant to § 1141(b), and once property is removed from the estate, the automatic stay terminates pursuant to § 362(c)(1). Revested with its property, a Chapter 11 debtor is "emancipated," *Pettibone Corp. v. Easley*, 935 F.2d 120, 122-23 (7th Cir.1991), and the rights of the debtor and its creditors are thereafter determined by the plan rather than the provisions of the Bankruptcy Code governing estate administration. *In re Victorian Park Assocs.*, 189 B.R. 147, 151 (Bankr. N.D. Ill. 1995)("[I]f all property is revested in the debtor and no estate remains to be administered, then the provisions in the Bankruptcy Code governing administration of a bankruptcy estate and the attendant rights and duties of creditors and debtors cease to govern."). Just as HSBC's motion for relief from stay was rendered moot by plan confirmation, so was its request for adequate protection under § 363(e).

*In re UAL Corp.*, 360 B.R. 780, 785 (Bankr. N.D. Ill. 2007)(footnotes omitted); *Cf.*, *In re Globokar*, 375 B.R. 383, 386-387 (Bankr. N.D. Ohio 2007)(denying relief for violation of the automatic stay after plan confirmation).

Thus, the "usual situation" is that "adequate protection is unavailable after confirmation." *In re UAL Corp.*, 360 B.R. at 785 n.4. However, in contrast to the "usual situation" presented in *UAL*, the court's decision recognized that different facts would yield a different result, specifically noting: "Revesting under § 1141(b) can be prevented by provisions of the plan or order of confirmation." *Id.*, n.3.

In the above captioned case, Article IV(A)(1) states: "Revesting of Assets. On the effective date, all property making up the Estate (including Causes of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Reorganized Debtor, free and clear of all claims." [Doc. #176-1, p. 30].

In turn, the Amended Chapter 11 Plan, Article 1(A)(17), states: "'Effective Date of the Plan' shall mean 30 days after entry of an order of confirmation." [Doc. #176-1, p.4].

2

15-30551-jpg    Doc 235    FILED 10/04/16    ENTERED 10/04/16 16:34:15    Page 2 of 3

Thus, the right to use cash collateral appeared to terminate under the Cash Collateral Order, but under the terms of the Plan, property of the estate did not vest in the Debtors for 30 days. Thus, nothing triggered the termination of the automatic stay under 11 U.S.C. Section 362(c)(1). Thus, the bankruptcy estate, and the automatic stay, continued to exist after Confirmation. This did not change until the Effective Date of the Plan, when property was vested in the Debtors pursuant to Article IV(A)(1) of the Plan. While the right to payment for the use of cash collateral should, arguably, terminate with the Debtors' right to use it, there is no indication that the Debtors actually stopped using First Federal's cash collateral.

In short, the court is presented with something of a hospital gown problem - not everything that should be covered, is covered. With the terms of the Cash Collateral Order and the Plan being inconsistent, the court will interpret the provisions in a way that reflects the court's understanding of what would be consistent with the parties' actions in reliance on those documents, and that will do the least violence to the Debtors' reorganization prospects and the reasonable expectations of First Federal as a secured creditor.

The court will interpret the Cash Collateral Order as continuing both the allowance of the use of cash collateral, and the obligations to make payments under the terms of the Cash Collateral Order, until the "Effective Date of the Plan".

Accordingly, the Debtors will be obligated to make one additional cash collateral payment, of $8,500, to First Federal. The Debtors shall make that payment within 10 days of the date of this Order.

Accordingly, it is

ORDERED that Debtors Birdstone, Inc., *et al*, shall pay to First Federal Bank of the Midwest Eight Thousand Five Hundred Dollars ($8,500) on, or before, October 14, 2016, without interest or penalty.

It is FURTHER ORDERED that this Memorandum and Order shall not alter, stay or amend any provisions of the Confirmed Plan after the Effective Date of the Plan.

# # #